UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
NINGBO PRODUCTS IMPORT
& EXPORT CO., LTD.,

                              Plaintiff,                        11 Civ. 650 (PKC)

           -against-

                                                       MEMORANDUM
                                                       AND ORDER

ELAN ELIAU, et al.,

                              Defendants.
-----------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

        Plaintiff Ningbo Products Import & Export Co., Ltd. brings this action against defendants Elan Eliau, Daniel Hedaya, and X.E.S.-NY Ltd. ("XES") for damages arising out of a breach of an agreement settling a dispute over the non-payment for textile and apparel products. Plaintiff alleges claims of breach of contract and fraudulent inducement to contract, and seeks to pierce the corporate veil against individual defendants Eliau and Hedaya, former officers and shareholders of XES. Defendants move to dismiss plaintiff's complaint under Rule 12(b)(6), FED. R. CIV. P., for failure to state a claim upon which relief can be granted. For the reasons set forth below, defendants' motion to dismiss is granted.

BACKGROUND

        Plaintiff is a Chinese corporation that exports and sells textile and apparel. (Compl. ¶ 1.) XES is a New York corporation that purchases and resells textiles and apparel products. (Id. ¶ 2.) Between July and October 2007, plaintiff entered into a series of sales agreements with XES. (Id. ¶¶ 8-9.) Despite accepting plaintiff's merchandise, XES failed to make payment; by October 2007, XES owed plaintiff $591,442.30 in outstanding payments. (Id.

¶ 11-12.)  Edith Eliau, then-president of XES, claimed that XES would be unable to pay the $591,442.30 it owed to plaintiff due to XES's financial difficulties.  (Id. ¶ 11.)

Plaintiff and XES's representatives began discussing a resolution of their dispute. Defendant Eliau, officer and majority owner of XES, initially proposed a settlement of $110,000, which plaintiff rejected.  (Id. ¶¶ 3, 12.)  Plaintiff then informed XES of its plans to "seek legal remedies" and file an involuntary bankruptcy petition against XES, to which defendant Eliau requested additional time to prepare a second settlement offer.  In response to Eliau's request, plaintiff refrained from filing an involuntary bankruptcy petition.  (Id. ¶¶ 12, 13.)

On February 8, 2008, plaintiff and XES entered into a settlement agreement that forms the basis of this lawsuit (the "Settlement Agreement").  The Settlement Agreement called for XES to pay plaintiff $300,000 in full satisfaction of XES's outstanding debt of $591,442.30. (Id. ¶ 14.)  The Settlement Agreement contained an acceleration clause by which the total "Disputed Amount" of $591,442.30 "shall become immediately due and payable" should XES breach its promise to pay the agreed-upon $300,000.  (Id. Ex. B, at 4.)  In exchange for XES's promise, plaintiff agreed to waive "any and all claims against XES" as to the remainder of the unpaid amount under the sales agreements.  (Id. ¶ 16.)  Moreover, plaintiff agreed:

> that it waives any and all additional claims against XES and releases XES, its officers, directors . . . and assigns from all actions, causes of action, . . . claims and demands whatsoever in law or in equity which it, or its successors and assigns, ever had, now have to hereafter can, shall or may have for or by reason of any matter whatsoever . . . .

(Id. Ex. B, at 2.)  Lastly, the Settlement Agreement required XES to pay the $300,000 in four separate installments.  Although XES transferred its initial payment of $50,000 to plaintiff on February 20, 2008, XES failed to make any of the three subsequent payments.  (Id. ¶¶ 16, 26-28.)

In January 2009, plaintiff commenced an action in this Court against XES for breach of the Settlement Agreement.  Ningbo Prods. Imp. & Exp. Co., Ltd. v. XES-NY Ltd., No. 1:08 CV 10309 (PKC) (S.D.N.Y. Apr. 21, 2009).  Plaintiff obtained a default judgment against XES in the amount of $541,903.30.  This award represented XES's initial $541,442.30 debt, less its February 2008 payment and plus plaintiff's costs and attorney fees.  See id.

In March 2010, while attempting to enforce its default judgment against XES, plaintiff discovered a series of transactions that occurred just prior to the February 8, 2008 Settlement Agreement.  First, plaintiff learned that on January 30, 2008 defendants Eliau and Daniel Hedaya, another officer and minority shareholder of XES, conveyed all of XES's assets to CIT Group/Commercial Services ("CIT").  (Compl. ¶¶ 4, 18-22.)  CIT is a corporate finance company that provides commercial loans to small and medium-sized businesses.  Since 2006, CIT had owned a security interest in XES's inventory, trade names, customer information, and business "good will," among other assets.  (Id. Ex. C.)  Although CIT had publicly filed this lien and the corresponding Uniform Commercial Code forms with the New York Department of State, (Supp. Decl. of Evan S. Weintraub ("Weintraub Decl."), Ex. A), plaintiff was unaware that CIT had foreclosed on the lien at the time of the February 2008 Settlement Agreement.  (Compl. ¶ 18.)

Plaintiff also learned in 2010 of three other transactions that occurred on January 30, 2008.  The first was a conveyance of XES's former assets by CIT.  Namely, CIT executed a "General Conveyance and Bill of Sale" ("Bill of Sale") agreement with Joseph A Holdings, LLC ("Holdings, LLC").[1]  (Id. Ex. D, at 1.)  Holdings, LLC is a Delaware limited liable company formed on January 23, 2008.  (Id. ¶ 20.)  The Bill of Sale between CIT and Holdings, LLC called

---

[1] The complaint erroneously refers to each of the limited liability companies as having been "incorporated."  See, e.g., Compl. ¶ 20.

3

for the conveyance of "virtually all of XES's assets" from CIT to Holdings, LLC.  In exchange, Holdings, LLC assigned to CIT its right to receive all forthcoming payments and amounts due it from a third party, Joseph A Company, LLC ("Company, LLC").  (Id.)  Company, LLC was formed under Delaware law on January 30, 2008—the same date as the Bill of Sale.  Defendants Eliau and Hedaya each signed the Bill of Sale in his individual capacity.  (Id. Ex. D, at 5.)

Also on January 30, 2008, Holdings, LLC and Company, LLC entered into a License Agreement.  (Id. Ex. E.)  Under this agreement, Holdings, LLC agreed to convey to Company, LLC an exclusive license to use trademarks and trade names previously owned and used by XES in order to sell merchandise and apparel bearing these marks.  (Id. ¶ 21 & Ex. E, at 6.)  In exchange, Company, LLC assigned to Holdings, LLC the right to receive royalties from Company, LLC's sale of the merchandise.  (Id. Ex. E, at 2.)  Neither Eliau nor Hedaya signed this agreement.  (Id.)

The fourth January 30, 2008 transaction that plaintiff discovered was an agency arrangement between Company, LLC and March 1st, LLC, a company that defendant Eliau formed under New York law on January 28.  (Id. ¶ 22 & Ex. F.)  Titled "Sales and Design Agreement," the agreement called for March 1st, LLC to act as sales agent for Company, LLC in "engag[ing] in the business of manufacturing and selling the product lines of [Company, LLC]" and "to act as a sales representative for [Company, LLC] to market and sell all Product Lines." (Id. Ex. F, at 1.)  In exchange, Company, LLC agreed to pay March 1st, LLC commissions from its sale of Company, LLC's merchandise.  (Id. Ex. F, at 3-4.)  This agreement took effect immediately upon execution of the Bill of Sale—in which CIT conveyed XES's former assets to Holdings, LLC—and the License Agreement between Holdings, LLC and Company, LLC, both described above.  (Id. Ex. F, at 2.)

The apparent result of these four January 30, 2008 transactions is the following: CIT acquired all of XES's assets; CIT then conveyed those assets to Holdings, LLC in exchange for revenues from the sale of merchandise bearing XES's former trademarks; Holdings, LLC licensed these marks to Company, LLC to generate the revenues Holdings, LLC owed to CIT; and Company, LLC hired March 1st, LLC—a company founded and owned by defendant Eliau—as its sales agent to sell and market the actual merchandise. (Id. ¶¶ 18-22.) Plaintiff was unaware of any of these four transactions on February 8, 2008, the date of the Settlement Agreement with XES. (Id. ¶ 18.)

Plaintiff commenced the present action against defendants XES, Eliau, and Hedaya on January 31, 2011. (Docket #1.) As noted, plaintiff's complaint includes three claims for relief: (1) fraudulent inducement to enter into the Settlement Agreement; (2) "pierce of corporate veil;" and (3) breach of contract. (Compl. at 8-11.) Plaintiff alleges that defendants had "actual knowledge of material facts relating to" to the transactions described above and that defendants "failed to disclose" these facts prior to the Settlement Agreement. (Id. ¶ 33.) Plaintiff seeks damages of $541,442.30, representing the remainder of the entire debt XES owed to plaintiff prior to the Settlement Agreement plus interest, costs, and fees. (Id. ¶ 7.)

LEGAL STANDARD

Defendants move to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted. Rule 8(a)(2), FED. R. CIV. P., requires "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957) (ellipsis in original)). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must provide the

grounds upon which the claims rest through factual allegations sufficient to raise a right to relief above the speculative level. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Twombly, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." Id. Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action" do not suffice to state a claim, as "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 1949-50.

In ruling on a motion to dismiss, the Court draws all reasonable inferences in the plaintiff's favor and accepts as true all well-pleaded factual allegations in the complaint. In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007) (per curiam). Although the Court is generally limited to facts as stated in the complaint, it may consider exhibits or documents incorporated by reference without converting the motion into one for summary judgment. See Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995). This Court may also consider any document integral to the complaint upon which it "relies heavily." See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002). Lastly, this Court may consider matters of public record for which it make take judicial notice. See Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993)).

DISCUSSION

In support of their motion to dismiss, defendants contend that: (1) the complaint fails to plead the elements of fraud with particularity; (2) veil piercing is a remedy, not a cause of action, and plaintiff has not alleged facts supporting the remedy; (3) plaintiff released and/or

waived all claims in the Settlement Agreement; and (4) the doctrine of res judicata bars plaintiff's claims. (Docket #13.)

      I.      <u>Plaintiff's Claims for Fraudulent Inducement and to Pierce the Corporate Veil Against All Defendants Are Dismissed</u>

            a.   <u>Fraudulent Inducement to Contract</u>

Plaintiff alleges that because defendants did not disclose facts regarding XES's transfer of assets to CIT, plaintiff was fraudulently induced to enter into the Settlement Agreement. (Compl. ¶¶ 33-37.) To state a claim for fraudulent inducement under New York law, a plaintiff must establish that (1) the defendant made a representation; (2) regarding a material existing fact; (3) which was false; (4) known by the defendant to be false; (5) the representation was made for the purpose of inducing plaintiff to rely upon it; and (6) that plaintiff reasonably did so rely; (7) in ignorance of its falsity; and (8) suffered damages or injury as a result. <u>Aetna Cas. Ins. & Sur. Co. v. Aniero Concrete</u>, 404 F.3d 566, 580 (2d Cir. 2005) (citing <u>Jo Ann Homes at Bellmore, Inc. v. Dworetz</u>, 25 N.Y.2d 112, 119 (N.Y. 1969)).

A claim for fraudulent inducement sounds in fraud. Rule 9(b), FED. R. CIV. P., requires that a plaintiff plead allegations of fraud with particularity. To satisfy the particularity requirement, the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." <u>Novak v. Kasaks</u>, 216 F.3d 300, 306 (2d Cir. 2000) (quoting <u>Shields v. Citytrust Bancrop, Inc.</u>, 25 F.3d 1124, 1128 (2d Cir. 1994) (internal quotations omitted)). In addition, a fraud claim must be supported by allegations "that give rise to a strong inference of fraudulent intent." <u>S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.</u>, 84 F.3d 629, 634 (2d Cir. 1996). A plaintiff raises a strong inference of fraudulent intent by alleging specific facts showing the defendants' "motive and opportunity to commit fraud" or that

7

"constitute strong circumstantial evidence of conscious misbehavior or recklessness."  Id. (citing Shields, 25 F.3d at 1128).  A material omission may support a fraudulent inducement claim if there is a duty to speak, to make a statement that is not misleading, or if there exists a confidential or fiduciary relationship between the parties.  See Mobil Oil Corp. v. Joshi, 202 A.D.2d 318, 318 (1st Dep't 1994).  A party's "intention to breach" an agreement "does not give rise" to a duty to disclose; rather, the duty must "exist separately from the duty to perform under the contract."  TVT Records v. Island Def Jam Music Grp., 412 F.3d 82, 91-92 (2d Cir. 2005).

Plaintiff has failed to plead its claim of fraudulent inducement with the requisite particularity required by Rule 9(b).  The complaint does not allege a confidential or fiduciary relationship between plaintiff and XES or its officers, nor does it allege any materially false statement made by any of the defendants for the purpose of inducing plaintiff to enter the Settlement Agreement.  See Mobil Oil, 202 A.D.2d at 318 (affirming denial of motion to dismiss where complaint alleged fraudulent concealment from defendant's "mere silence" and with no showing of a confidential or fiduciary relationship).  Plaintiffs have not identified any statements, representations, or promises made by defendants regarding XES's asset portfolio, lien arrangements, outstanding debts to third parties, or financial ability to make the payments under the Settlement Agreement.  Plaintiffs have not alleged that any of the defendants actively concealed or misrepresented the transfer of XES's assets to CIT.  Rather, plaintiff asserts that defendants had "knowledge of material facts relating to CIT's actions on XES" and that at the time of the Settlement Agreement, the defendants "knew that XES had neither [the] asset[s] nor capacity" to perform and failed to disclose the transfers to CIT. (Compl. ¶¶ 33, 34.)  These allegations are insufficient under Rule 9(b).

Plaintiff has not identified any specific statements or omissions made by defendants to induce it to enter the Settlement Agreement. Accordingly, plaintiff's claim for fraudulent inducement is dismissed.

      b. <u>Piercing the Corporate Veil</u>

Plaintiff also purports to bring a claim for "pierc[ing] of [the] corporate veil." (Compl. ¶¶ 38-44.) Plaintiff contends that "[t]he corporate veils should be pierced" and that both individual defendants must be held "personally liable for their fraudulent acts." (<u>Id.</u> ¶ 39.) Plaintiff alleges that: (1) defendants Eliau and Hedaya were officers and shareholders of XES at the time of the Settlement Agreement; (2) Eliau negotiated the Settlement Agreement with plaintiff; (3) Eliau and Hedaya each signed the instrument conveying XES's assets to CIT as well as the Bill of Sale (conveying those assets to Holdings, LLC); and (4) the funds XES used to make the first installment payment to plaintiff originated from Eliau's personal account. (<u>Id.</u>) As such, plaintiff contends that Eliau and Hedaya "used the corporation as the key to perpetrate the fraud" in inducing plaintiff to enter the Settlement Agreement. (<u>Id.</u> ¶ 42.)

"New York courts disregard corporate form reluctantly." <u>Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.</u>, 98 F.3d 13, 17 (2d Cir. 1996) (internal quotations omitted). A party seeking to pierce the corporate veil and hold an individual liable for the debts of a corporation must satisfy a two-part test by showing: (1) "that the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." <u>Morris v. N.Y. State Dep't of Taxation & Fin.</u>, 82 N.Y.2d 135, 141 (N.Y. 1993), <u>cited</u> in <u>Am. Fuel Corp. v. Utah Energy Dev. Co.</u>, 122 F.3d 130, 134 (2d Cir. 1997). To avoid dismissal, a plaintiff seeking to pierce the corporate veil must plausibly allege both elements. <u>DirecTV Latin

9

Am., LLC v. Park 610, LLC, 691 F. Supp. 2d 405, 432 (S.D.N.Y. 2010) (internal quotations omitted).

In determining whether an individual exercised complete domination over the corporation, courts in this Circuit, applying New York law, consider the following factors:

> (1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, i.e., issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arms length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by the corporation, and (10) whether the corporation in question had property that was used by the corporation as if it were its own.

Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc., 933 F.2d 131, 139 (2d Cir. 1991). Although allegations concerning the "domination element" of the two-part test are subject to "the basic pleading standard of Rule 8," a plaintiff's allegations concerning the defendant's fraudulent acts "are subject to the heightened pleading standard of Rule 9(b) to the extent that they allege fraud." Id. Indeed, where a plaintiff seeks to pierce the corporate veil based on allegations of fraud, "the heightened pleading standard of Rule 9(b) is the lens through which those allegation[s] must be examined." In re Currency Conversion Fee Antitrust Litig., 265 F. Supp. 2d 385, 425 (S.D.N.Y. 2003). "[P]urely conclusory allegations cannot suffice to state a claim based on veil-piercing or alter-ego liability" under either pleading standard. See id. at 426.

Plaintiff fails to allege either domination and control or fraudulent conduct with sufficient specificity. Plaintiff asserts that defendants Eliau and Hedaya, as shareholders and officers of XES, "exercised such control over XES that the corporation became a merely [sic] instrumentality of the owners" and that Eliau "deposited his personal fund [sic] into XES' corporate account to pay the first installment" of the settlement. (Compl. ¶¶ 40-42.) These allegations are insufficient to show Eliau and Hedaya's domination and control over XES, the first prong of plaintiff's required two-part showing. Plaintiff must do more than allege that defendants were officers of XES who "used the corporation as the key to perpetrate" fraud. See, e.g., DirecTV, 691 F. Supp. 2d at 433 (dismissing plaintiff's complaint that alleged corporation "was owned by" and was "the instruments of" individual defendants in perpetrating "fraudulent conduct"). Plaintiff has not plausibly alleged the absence of corporate formalities, Eliau or Hedaya's use of corporate funds for personal purposes, inadequate capitalization, or any other indicia of abuse of the corporate form. "The mere claim that the corporation was dominated by the defendants . . . without more, will not suffice to support the equitable relief of piercing the corporate veil." Damianos Realty Grp., LLC v. Fracchia, 35 A.D.3d 344, 344 (2d Dep't 2006). The deposit of personal funds into a corporate account to pay a corporate debt—without more—does not adequately allege domination and control; it is equally consistent with a capital contribution by a shareholder.

Plaintiff has also failed to satisfy the heightened pleading standards of Rule 9(b) regarding Eliau and Hedaya's "fraudulent acts." (Compl. ¶ 39.) Plaintiff alleges that Eliau and Hedaya were "the real actors [who] used the corporation as the key to perpetrate the fraud." (Id. ¶ 42.) As discussed above, plaintiff does not identify any representations made by the defendants by way of specific acts or omissions, when and where such representations were

11

made, which of the two individual defendants made such representations, or how plaintiff reasonably and justifiably relied on those representations. Rule 9(b), Fed. R. Civ. P.[2]

For the reasons stated above, plaintiff has failed to state a claim for piercing the corporate veil.

> II. Plaintiff's Claim for Breach of Contract Against All Defendants is Dismissed

Plaintiff brings a claim for breach of contract against all three defendants—XES, Eliau, and Hedaya. (Compl. ¶¶ 45-49.) Specifically, plaintiff alleges that defendants "breached the terms of the Settlement Agreement by failing to render" the unpaid balance of $250,000. (Id. ¶¶ 47-48.) Plaintiff claims that under the Settlement Agreement's acceleration clause, XES is now liable to plaintiff for XES's total "unresolved obligation," which includes the payments that XES originally owed to plaintiff. (Id. ¶¶ 46-48.) Plaintiff brings this breach of contract claim not only against XES, but defendants Eliau and Hedaya for "not uphold[ing] their terms of the Settlement Agreement." (Id. ¶ 49.) For the reasons that will later be explained, plaintiff cannot prevail against XES on this theory because it already has sued and obtained a default judgment against XES. Plaintiff's claim against the individual defendants Eliau and Hedaya also fails.

> a. Defendants Eliau and Hedaya

Under New York law, individuals generally are not liable for their corporation's debts or obligations. See Cohen v. Koenig, 25 F.3d 1168, 1173 (2d Cir. 1994) (citing We're Assocs. Co. v. Cohen, Stratcher & Bloom, P.C., 65 N.Y.2d 148, 151 (N.Y. 1985)). However,

---

[2] Defendants also contend that plaintiff's claim to pierce the corporate veil should be dismissed because piercing the corporate veil "is not its own cause of action" under New York law. (Def.'s Mem. at 20.) Because this Court determines that plaintiff has failed to sufficiently allege a veil-piercing claim, it need not address defendants' contention. Moreover, the New York Court of Appeals has stated that piercing of the corporate veil is not a separate cause of action only as against the corporation; the claim remains viable as an "equitable" theory upon which to impose a "corporate obligation on its owners." Morris v. N.Y. State Dep't of Taxation & Fin., 82 N.Y.2d 135, 141 (N.Y. 1993) (noting that the concept "assumes the corporation itself is liable for the obligation"). Plaintiff already holds a valid and enforceable judgment against the corporation, XES, for the amount in dispute. Ningbo Prods. Imp. & Exp. Co., Ltd. v. XES-NY Ltd., No. 1:08 CV 10309 (PKC) (S.D.N.Y. Apr. 21, 2009). Accordingly, this Court considers plaintiff's claim to pierce the corporate veil against defendants Eliau and Hedaya.

officers, directors, or other individuals acting on behalf of a corporation may be held personally liable for fraud "if they participate in [the fraud] or have actual knowledge of it." Id. (quoting People v. Apple Health & Sports Clubs, Ltd., 80 N.Y.2d 803, 807 (N.Y. 1992)). Accordingly, a corporate officer may be liable in his individual capacity for "fraudulent acts or representations of his own . . . even though his actions . . . may be in furtherance of the corporate business." Id. (quoting A-1 Check Cashing Serv., Inc. v. Goodman, 148 A.D.2d 482, 482 (2d Dep't 1989)).

To hold officers liable for their corporation's contractual obligations, plaintiff must thus establish the defendants' fraudulent acts or omissions under the heightened pleading standards of Rule 9(b). See Sofi Classic S.A. de C.V. v. Hurowitz, 444 F. Supp. 2d 231, 248 (S.D.N.Y. 2006). Furthermore, a plaintiff alleging a claim sounding in fraud against multiple defendants under Rule 9(b) must "plead with particularity by setting forth separately the acts complained of by each defendant." Sofi Classic, 444 F. Supp. 2d at 248 (quoting Ellison v. Am. Image Motor Co., 36 F. Supp. 2d 628, 641-42 (S.D.N.Y. 1999)) (emphasis added). In doing so, plaintiff may not rely on defendants' purported misrepresentations of future intent to perform; plaintiff must identify misrepresentations of presently existing facts made to induce plaintiff to enter the Settlement Agreement. See Cohen, 25 F.3d at 1172.

In the present case, neither Eliau nor Hedaya executed Settlement Agreement in their individual capacities. (Compl. Ex. B.) Accordingly, to hold these two defendants liable for XES's breach of the Settlement Agreement, plaintiff must satisfy the heightened pleading standards of Rule 9(b) in alleging their specific fraudulent acts or representations on behalf of XES.

Plaintiff's claim fails for the same reasons as does its claim for fraudulent inducement. First, the complaint baldly asserts that "XES, Eliau, and Hedaya did not uphold

their terms" of the Settlement Agreement, but contains no other reference to Eliau or Hedaya's role in XES's failure to pay the settlement amount.  (Compl. ¶¶ 45-49.)  Indeed, plaintiff's breach of contract claim does not specify any fraudulent acts perpetrated by Eliau and Hedaya, representations or omissions Eliau and Hedaya made or did not make, or "what role each defendant played in the alleged fraud."  Apex Mar. Co. v. OHM Enters., 2011 WL 1226377, at *3 (S.D.N.Y. Mar. 31, 2011) (dismissing claim of fraudulent inducement against corporate officers where complaint "lump[ed] all defendants—both corporate and individuals—together" in perpetrating alleged fraud).  The complaint does not "(1) detail the [allegedly fraudulent] statements (or omissions) . . . , (2) identify the speaker, [or] (3) state where and when the statements (or omissions) were made."  Harsco Corp. v. Segui, 91 F.3d 337, 347 (2d Cir. 1996).  A claim of fraud asserted against multiple defendants is insufficient under Rule 9(b) where the complaint "is replete with vague accusations against 'the defendants' without reference to the specific parties or the specific acts."  Natowitz v. Mehlman, 542 F. Supp. 674, 676 (S.D.N.Y. 1982).

        Plaintiff has failed to state with particularity any specific fraudulent acts or omissions committed by each defendant in furtherance of XES's corporate business.  See, e.g., Sofi Classic S.A. de C.V. v. Hurowitz, 444 F. Supp. 2d 231, 248 (S.D.N.Y. 2006) (granting motion to dismiss where complaint "fail[ed] to specify the content of the alleged false statements, fail[ed] to state where and when particular statements were made, and fail[ed] to identify which of the two Defendants made each statement or omission").  Plaintiff's claim for breach of contract against defendants Eliau and Hedaya is therefore dismissed.

b.  Defendant XES

As noted, plaintiff's complaint also asserts a claim for breach of the Settlement Agreement against defendant XES.  Defendants move to dismiss on the grounds of res judicata.  (Defs.' Mem. at 5.)

Under the doctrine of res judicata, a "final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  EDP Med. Computer Sys., Inc. v. United States, 480 F.3d 621, 624 (2d Cir. 2007) (internal quotations omitted).  To prove the affirmative defense of res judicata, a party must establish that: (1) the prior action served as an adjudication on the merits; (2) the prior action was brought by the plaintiffs or those in privity with them; and (3) the claims asserted in the subsequent action were or could have been raised in the prior action.  See Monahan v. N.Y. City Dep't of Corrections, 214 F.3d 275, 285 (2d Cir. 2000).  A district court may dismiss a claim on res judicata grounds on a motion to dismiss.  See Salahuddin v. Jones, 992 F.2d 447, 449 (2d Cir. 1993) (per curiam).

"Res judicata does not require the precluded claim to actually have been litigated" for it to represent an adjudication on the merits.  EDP Med., 480 F.3d at 626.  Accordingly, "default judgments can support res judicata as surely as judgments on the merits."  Id. (quoting Morris v. Jones, 329 U.S. 545, 550-51 (1947)).  Moreover, "literal privity is not a requirement" for res judicata to apply.  Monahan, 214 F.3d at 285.  A party "will be bound by the previous judgment if his interests were adequately represented by another vested with the authority of representation."  Id. (quoting Alpert's Newspaper Delivery, Inc. v. New York Times Co., 876 F.2d 266, 270 (2d Cir. 1989)).

Lastly, the Second Circuit employs the transactional approach to res judicata. See Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286-87 (2d Cir. 2002). As such, a claim is considered one that "could have been raised" in a prior action if the claim "concern[s] the transaction, or series of connected transactions, out of which the [first] action arose." Cieszkowska v. Gray Line N.Y., 295 F.3d 204, 205 (2d Cir. 2002) (per curiam). Claims premised upon "[n]ew legal theories do not amount to a new cause of action so as to defeat the application of" res judicata. In re Teltronics Servs., Inc., 762 F.2d 185, 193 (2d Cir. 1985).

Plaintiff already holds a valid and enforceable judgment against XES. Ningbo Prods. Imp. & Exp. Co., Ltd. v. XES-NY Ltd., No. 1:08 CV 10309 (PKC) (S.D.N.Y. Apr. 21, 2009). Moreover, plaintiff's judgment against XES is for XES's total outstanding debt under the original sales agreements—not merely the $250,000 in unpaid installments under the parties' Settlement Agreement. See id. (entering judgment in favor of plaintiff for $541,903.30, representing XES's initial debt of $591,442.30 debt less its first settlement installment payment and plus plaintiff's costs and attorney fees). As such, no favorable disposition against XES in the present action could result in additional damages or relief as to this defendant.

Plaintiff seeks to avoid the invocation of res judicata by claiming that defendants fraudulently induced it to enter the Settlement Agreement and that, accordingly, the "fraud exception" to res judicata should apply. See L-Tec Elecs. Corp. v. Cougar Elec. Org., 198 F.3d 85, 88 (2d Cir. 1999). Generally, the doctrine of res judicata applies even where the subsequent action is premised upon "newly discovered evidence" unless that evidence "was fraudulently concealed" or "could not have been discovered with reasonable diligence." Id. (quoting Saud v. Bank of N.Y., 929 F.2d 916, 920 (2d Cir. 1991)). A plaintiff seeking to apply the fraud exception to res judicata must "allege with particularly" what the defendant "did to conceal any

material information" and why it "was unable to discover" defendant's actions.  Rafter v. Liddle, 704 F. Supp. 370, 377-78 (S.D.N.Y. 2010).  If the plaintiff could have uncovered the allegedly concealed evidence "with minimal diligence" or upon reasonable inspection, the fraud exception to claim preclusion will not apply.  See id. at 378 (holding that res judicata barred claims of breach of contract and fraud where plaintiff "could have just asked" defendant about certain details contained in parties' agreement); see also In re Layo, 460 F.3d 289, 292-93 (2d Cir. 2006) (barring plaintiff's claim under res judicata where an inspection of "county records" would have "uncovered the history of . . . liens on the [disputed] property").

Plaintiff has not alleged facts with the requisite specificity or particularity to invoke the fraud exception to res judicata.  Plaintiff contends that it "had absolutely no reason to know of Eliau and Hedaya's secret transfer of assets to CIT and ultimately back to [them]" when it filed its prior action against XES.  (Pl.'s Mem. Opp. at 6-7.)  However, plaintiff has not alleged that any of the defendants actively concealed, omitted, or misrepresented the transfer of XES's assets to CIT either during settlement negotiations or at any time leading up to the Settlement Agreement.  Rather, plaintiff asserts that defendants had "knowledge of material facts relating to CIT's actions on XES" and that at the time of the Settlement Agreement, the defendants "knew that XES had neither [the] asset[s] nor capacity" to perform and failed to disclose the transfers to CIT.  (Compl. ¶¶ 33, 34.)  As discussed above, a party's mere intent not to perform is not sufficient to establish fraudulent conduct.  See TVT Records v. Island Def Jam Music Grp., 412 F.3d 82, 91-92 (2d Cir. 2005).

Plaintiff also does not any allege facts supporting that the defendants had a duty to disclose the transfers or that a confidential or fiduciary relationship existed between the parties.  See Mobil Oil Corp. v. Joshi, 202 A.D.2d 318 (1st Dep't 1994).  In the absence of facts alleging

how defendants "fraudulently concealed" the transfer of XES's assets, plaintiff cannot escape the defense of res judicata via this Circuit's narrow fraud exception. See L-Tec Elecs., 198 F.3d at 88 (2d Cir. 1999) (denying fraud exception where plaintiff not only failed to show that the "individual defendants actively concealed . . . the existence of the[ir] non-corporate entity," but also "could have ascertained this information through due diligence").

Accordingly, plaintiff's breach of contract claim against XES is dismissed.[3]

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss is GRANTED. Plaintiff may seek leave to amend by filing a motion, annexing the proposed pleading, within thirty (30) days of this Order.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
October 31, 2011

---

[3] Defendant also moves to dismiss plaintiff's claims against individual defendants Eliau and Hedaya on the grounds of res judicata. (Def.'s Mot. at 5-8.) Because this Court holds that plaintiff fails to state any of its three claims against Eliau and Hedaya, this Court need not address whether res judicata would also bar plaintiff's claims as against them.